### BENNECKE v. INSURANCE COMPANY.

A party whose life was insured died at a place south of a certain parallel of latitude, his visit to which at that season of the year, without the consent of the company, worked a forfeiture of the policy. A relative, ignorant of his death, paid the customary price for a permit to go South to the local agent of the company, who transmitted to its State agents the money, and requested them to obtain the permit and forward it to him. It was not issued, and the agent, shortly after hearing of the death of the insured, tendered the money he had so received. *Held*, that the facts did not constitute a waiver of the forfeiture, and if they did, it was not, under the circumstances, binding.

ERROR to the Circuit Court of the United States for the Southern District of Illinois.

This was an action of assumpsit brought by Amelia Bennecke to recover of the Connecticut Mutual Life Insurance Company the sum of $2,000 upon a policy of life insurance.

The parties having waived a jury, the issues, both of fact and law, were submitted to the court, which made a special finding, from which the following facts appear: —

On Jan. 29, 1878, Adolph Bennecke procured from the Connecticut Mutual Life Insurance Company, through John Ansley, its agent at Bloomington, Ill., a policy of insurance

on his life, for $2,000, for the benefit of Amelia Bennecke, his wife. It was an ordinary life policy, and contained, among other conditions, the following: —

" 3d, That the said insured is under this policy freely permitted to reside in any civilized abode in the western hemisphere, lying north of the thirty-second parallel of north latitude in the United States, and lying south of said thirty-second parallel, excepting from the first day of July to the first day of November, and in the eastern hemisphere lying north of the forty-second parallel of north latitude and west of the fortieth meridian of longitude east from Greenwich, and he may also pass as a passenger by usual routes and means of public conveyance to and from any port or place within the foregoing limits; but if he shall, at any time during the continuance of this policy, pass beyond or be without the foregoing limits without the consent of this company previously given in writing in each or either of the foregoing cases, then this policy shall become and be null and void.

" 4th, That in every case in which this policy shall cease and determine, or shall be or become null and void, all premiums paid in respect to the same shall be forfeited to the company."

After the signatures of the secretary and vice-president of the company and on the margin at the bottom of the policy appears the following: —

" ☞ Agents of the company have no authority to make, alter, or change any condition of the policy, nor to waive forfeiture thereof."

The annual premium of $46.24 required by the terms of the policy was duly and fully paid.

Bennecke left his home at Bloomington, Ill., on Sept. 26, 1878, and went to New Orleans, La., where he remained until his death, which occurred Oct. 15, 1878. He died of yellow fever.

Ansley had been the agent of the Connecticut Mutual Life Insurance Company, at Bloomington, Ill., from 1863, up to and including October, 1878. On Oct. 16, 1878, he first heard that Bennecke had gone to New Orleans. On October 17, he called on Haker, the assured's brother-in-law, to whom he stated that he had heard that Bennecke was then in New Orleans, and that on account of this violation of the condition

of the policy the insurance was forfeited. He advised Haker to pay, on behalf of Bennecke, twenty dollars, the price of a Southern permit. Haker at first said he knew nothing about it, and refused to pay the money. He then said he would look into the matter. The same day, after a consultation with Mrs. Bennecke, he went to Ansley's office, paid him twenty dollars, and took from him a receipt, as follows: —

"$20.     AGENCY AT BLOOMINGTON, ILL., Oct. 17, 1878.

"Received from Christ. Haker, twenty dollars, being the amount required for a southern permit on policy of Adolph Bennecke in the Connecticut Mutual Life Insurance Company, of Hartford, Conn., No. 52,242.

"Amount of policy $2,000.

"JOHN ANSLEY, *Agent.*"

At the time of taking this receipt, neither Haker, Ansley, nor Bennecke's wife or friends knew that Bennecke was dead.

Ten dollars per thousand was the customary price fixed by the company as the extra premium for a permit to go south of the thirty-second parallel between the 1st of July and the 1st of November. Ansley recollected having received money for three or four such permits, possibly more, at that rate. In such cases he simply received the money for the permits, forwarded it to the State agents of the insurance company at Chicago, and requested them to get permits from the insurance company at Hartford, Conn., and send them to him for delivery. He enclosed the twenty dollars received from Haker to the State agents of the insurance company at Chicago, in the following letter, the receipt of which they acknowledged: —

"AGENCY AT BLOOMINGTON, Oct. 17, 1878.
"Messrs. STEARNS, DICKINSON, & Co.

"GENTS, — Herein please find draft for $20, less ex., for which please get and send me a southern permit for A. Bennecke, insured by policy 52,242; amount $2,000. He went to New Orleans about ten days ago, and will probably remain there during the balance of the month. Please give this immediate attention, and get permit here as soon as possible. This twenty dollars paid this day.

"Yours truly,     JOHN ANSLEY."

Ansley never received a permit from the insurance company for Bennecke. On the 6th of November, 1878, he having become satisfied that Bennecke was dead at the time the money was paid for the permit, of his own motion took twenty dollars of other money belonging to the company and tendered it to Haker, stating as a reason therefor that Bennecke was dead at the time the money was paid. Haker refused to receive it. Ansley had no authority to issue policies of insurance, but after they were issued he turned them over to the parties on payment of the premium. He received no word from the company or the State agents about Bennecke's death up to the time he tendered the money to Haker. On the 26th of October he addressed a letter to those agents, in which he informed them that Bennecke had died on October 17, in New Orleans, of yellow fever. From all that appears this was the first information received by them of Bennecke's death.

Ansley knew what was the price required for a permit, and had never applied for one without getting it. But he never applied for one when yellow fever was prevailing in the forbidden region. Proofs of loss, dated the 6th of December, 1878, were furnished the insurance company, and on the trial it offered to return the money received by Ansley for the permit.

Suit on the policy was begun in the Circuit Court of McLean County, Illinois, on the eighteenth day of April, 1878, by a declaration on the policy. The general issue only was pleaded, and on the petition of the defendant the case was transferred to the Circuit Court of the United States. It was admitted by the company that there was no other defence in the case than what arose from the forfeiture of the policy by reason of the fact that Bennecke had gone south of the thirty-second parallel of latitude between the first of July and the first of November, without the consent of the company previously given in writing; and on the foregoing facts it occurred as a question whether the forfeiture had been waived by the company, on which question the judges were opposed, and the presiding judge being of opinion that the forfeiture had not been waived, judgment was entered for the defendant.

Whereupon, and on motion of the defendant, by its counsel,

it was ordered that the state of the pleadings, and the facts found, and the question on which the judges differed, be certified according to the request of the defendant, and the law in that case made and provided, to this court to be finally decided.

The cause has accordingly been brought to this court by writ of error.

*Mr. William A. McKenney* for the plaintiff in error.
*Mr. Edward S. Isham* for the defendant in error.

MR. JUSTICE WOODS, after stating the case, delivered the opinion of the court.

It is not disputed by the plaintiff, that, upon the facts found, the policy of insurance had been forfeited. It is not insisted that the company by its agent formally waived the forfeiture, or issued any permit to Bennecke, from which such waiver could be inferred.

But the plaintiff contends that, after the forfeiture of the policy, Ansley, the agent of the company at Bloomington, having on October 17 received the sum usually charged for a permit to reside south of the thirty-second parallel, between the 1st of July and the 1st of November, and sent it on the same day to the agents of the company at Chicago, its receipt by them, and the fact that they never returned it to the person by whom it was paid, are sufficient to establish the company's waiver of the forfeiture.

It does not appear from the findings that either the agent at Bloomington, or those at Chicago, had any direct authority to waive a forfeiture. But even if it were shown that they had such authority, and had waived the forfeiture, or that the company itself had waived it, the waiver would not, under the circumstances of this case, be binding on the company.

A waiver of a stipulation in an agreement must, to be effectual, not only be made intentionally, but with knowledge of the circumstances. This is the rule when there is a direct and precise agreement to waive the stipulation. *A fortiori* is this the rule when there is no agreement either verbal or in writing to waive the stipulation, but where it is sought to deduce a waiver from the conduct of the party. Thus, where a written

agreement exists and one of the parties sets up an arrangement of a different nature, alleging conduct on the other side amounting to a substitution of this arrangement for a written agreement, he must clearly show not merely his own understanding, but that the other party had the same understanding. *Darnley (Earl)* v. *London, Chatham, & Dover Railway Co.,* Law Rep. 2 H. L. 43.

The same rule applies to the ratification by the principal of the unauthorized acts of his agent.

"It is perfectly well settled that a ratification of the unauthorized acts of an agent, in order to be effectual and binding on the principal, must have been made with a full knowledge of all material facts, and that ignorance, mistake, or misapprehension of any of the essential circumstances relating to the particular transaction alleged to have been ratified will absolve the principal from all liability by reason of any supposed adoption of or assent to the previously unauthorized acts of the agent." *Combs* v. *Scott,* 12 Allen (Mass.), 493.

And it has been declared by this court that "no doctrine is better settled, both upon principle and authority, than this: that the ratification of an act of an agent previously unauthorized must, in order to bind the principal, be with a full knowledge of all the material facts. If the material facts be either suppressed or unknown, the ratification is treated as invalid, because founded on mistake or fraud." *Owings* v. *Hull,* 9 Pet. 607. See also *Diehl* v. *Adams County Mutual Insurance Co.,* 58 Pa. St. 443; *Bevin* v. *Conn. Mutual Life Insurance Co.,* 23 Conn. 244; *Viall* v. *Genessee Mutual Insurance Co.,* 19 Barb. (N. Y.) 440.

There is no pretence in this case that the company was advised of the material facts, when its supposed waiver of the forfeiture of the policy and its ratification of the acts of its agent took place. The contention of the plaintiff is that a forfeiture was waived when the company was totally ignorant that it existed. And the waiver is inferred from a permit, which is itself deduced from the fact that an agent, himself ignorant of the material facts, agreed to apply to the company for it, and received and forwarded the money to pay therefor.

The very purpose for which a permit was asked shows that both parties were ignorant of the facts which should have been communicated to the company and its agents before any effect could be given to its alleged waiver of the forfeiture. Permission was asked that Bennecke might reside and travel south of a certain parallel. This implied that he was living and able to travel. But the findings show he was dead when the permit was applied for. If the company had given him a formal permit in writing to reside and travel south of the thirty-second parallel, he being dead at the time, and the company ignorant of the fact, it would be a complete *non sequitur* to hold that this amounted to a waiver of a forfeiture of the policy unknown to the company, and consequent upon his doing the act for which a permit was asked, and which was in violation of a condition of the policy.

The case may be thus stated: The right of the plaintiff to a recovery rests on a waiver by the insurance company of the forfeiture of the policy. But there has been no direct waiver. The waiver is deduced from the permit. But there has been no formal permit. The permit is inferred from the fact that Ansley, a local agent, who had no knowledge of the death of Bennecke, applied for a permit to other agents also ignorant of the death of Bennecke, and remitted to them the money therefor which they retained, but which Ansley tendered back, using for the tender other moneys of the company; the company itself, the principal of these agents, being all the time ignorant that Bennecke had forfeited his policy by a violation of its conditions, or that he had died in consequence of such violation, or that after his death a permit to allow him to reside and travel in the forbidden region had been applied for, or that any money had been handed to its agent to be paid over as the consideration for such permit.

The case of the plaintiff is not aided by the facts found by the court in relation to the retention by the agents of the company of the money paid for the permit. It is unnecessary to decide what inference might be drawn if the company or its agents, with full knowledge of the death of Bennecke, had retained the money and never tendered it back. It does not appear that Ansley was informed of the death of Bennecke

until October 26. On November 6, eleven days thereafter, he tendered back to Haker the money advanced by him to pay for the permit. Under the circumstances of this case we do not think this lapse of time sufficient to show that Ansley intended to waive the forfeiture of the policy, even if he had been clothed with authority to do so.

If the company was bound by the act of Ansley in receiving the money for the permit, it was entitled to the benefit of his act in tendering it back. One tender was sufficient. That made by Ansley was never disavowed by the company. On the contrary, the company renewed it upon the trial of the cause in the Circuit Court.

Under the circumstances of this case, the contention that the insurance company waived the forfeiture of the policy is without support.

*Judgment affirmed.*