GEORGE W. ROBINSON AND JOHN H. DAHLKE v. JAMES BOYS AND WILLIAM O'NEILL, RECEIVERS OF THE ENTERPRISE MINING AND TRANSPORTATION COMPANY.

1. Under the act of the legislature entitled "An act enabling grantees of reversions and lessees mutually to avail themselves of covenants and conditions" (*Gen. Stat.*, p. 880, §§ 135, 136), the grantees of a reversion have the same right as the grantors to take advantage of a forfeiture which occurs by reason of an express condition of a mining lease, that the same shall become null and void upon a failure on the part of the lessees or their assigns to pay the rent reserved or the royalties upon the ore sold and delivered at the times provided in the lease for such payment.

2. When such forfeiture occurs, the lessor or his grantee of the reversion may bring an ejectment to recover the possession of the lands contained in the lease, without making any demand for the rent or royalties due and unpaid, and without making any re-entry upon the demised premises.

3. Where a mining lease reserved a rent of $400 per year, payable quarterly, and this amount to be deducted from the royalties, when they were in excess of that sum, and which also were payable quarterly on ore as sold and delivered to purchasers, the lease further providing that if payments were not made at such times, the lease should be null and void. This condition required the full payment of all royalties on ore sold and delivered at the end of each quarter year, and if not so paid, it was a forfeiture of the lease.

4. The payment of the rent and royalties was a condition subsequent, the non-performance of which had the effect of defeating the estate granted and rendered the agreement null and void and as if it had never existed. A grant with a proviso to pay a certain rent by a certain day, and unless done the estate granted and the agreement should be void, is a condition, and upon the non-performance of which the grantor may re-enter or bring ejectment.

5. Where the ore sold and delivered could only be ascertained by the books and accounts of the lessees, and the acceptance of a part of the rents and royalties by one of two joint lessors without knowledge on his part that any greater sum than that tendered and received by him was due and unpaid, will not be a waiver of the forfeiture caused by the non-payment of the full amount due. If the acceptance is by one of the two joint lessors with such knowledge, then it operates as a waiver against the other.

6. Where the evidence as to the existence of such knowledge as an essential element of a waiver is in dispute, the questions must be submitted to the jury.

On rule to show cause.

Argued at November Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, GARRISON and LIPPINCOTT.

For the plaintiffs, *John H. Dahlke* and *William H. Morrow.*

For the defendants, *George M. Shipman* and *John T. Van Cleef.*

The opinion of the court was delivered by

LIPPINCOTT, J.    This is an action of ejectment to recover possession of premises held by the defendants under an agreement or mining lease, made by Charles Osmun, a former owner of the premises, to William C. Folkner and Thomas Craig, bearing date December 31st, 1890, to run for twenty years from the date thereof. Through several deeds of conveyance the title to the lands and premises and the reversion became vested in the plaintiffs, and the interest of the lessees became, by two assignments, vested in the defendants.

This action and the recovery therein are based upon an alleged forfeiture of the agreement or mining lease, according to its terms, whereby the plaintiffs claim to be entitled to re-enter and recover possession. The defendants claim that the lease is still a valid and subsisting one, and that no forfeiture has occurred, and therefore they are still entitled to the possession.

The cause was tried at the Warren Circuit of the Supreme Court.

The learned trial justice held that a forfeiture had occurred, and that the plaintiffs were entitled to recover unless there had been a waiver of the forfeiture, and upon that question being submitted to the jury, a verdict in favor of the plaintiffs was returned, and thereupon this rule to show cause was allowed why the verdict should not be set aside.

The first question arising in the case is as to the true con-

struction of the agreement or mining lease out of which this action arose.

The lease, by its terms, granted, bargained and sold to the lessees, their heirs and assigns, for the term of twenty years, commencing from the date aforesaid, the exclusive right to all iron ore contained in or under the lands and premises therein described, being a tract of land of about one hundred and sixty-three acres, situate in the township of Oxford, in the county of Warren, in this state, with all the necessary right of exploration and other rights in order to mine the iron ore therein.

One clause of the lease provided that, in consideration of the lease, " the said party of the second part [the lessees], their heirs and assigns, covenant to pay to the said party of the first part [the lessor], his heirs and assigns, for every ton of twenty-two hundred and forty pounds in weight of clean, merchantable iron ore raised, mined and taken away by them or by their order from the said premises, the price of forty cents per ton as aforesaid, payable every three months after sale and delivery of the ore to the purchaser or purchasers, the weight to be ascertained on the scales of such purchaser or purchasers.

" It is further agreed that nine months from the date of this lease shall be allowed the party of the second part for development of said tract ; each and every year thereafter during the term of this lease they shall pay unto the said party of the second part the sum of four hundred dollars, in quarterly payments, the same to be deducted from royalties that may each year be due to the said party of the first part. In case of non-payment of royalties as aforesaid during any quarter of any year of the term of this lease, after the nine months as above named, to said party of the first part by said party of the second part, then in such case this lease shall become null and void."

It will be seen that by the terms of this lease all royalties of whatever amount were to be payable quarterly after sale and delivery. The sum of $400 was to be payable each year in

quarterly payments, whatever might be the amount of actual royalties less than that sum.

On December 27th, 1890, Folkner and Craig assigned this lease to one James Boys, who, on February 4th, 1892, assigned the same to the Enterprise Mining and Transportation Company. All the rights under this lease were by these assignments transferred and upon and in consideration of the performance by the assignees of all the terms, covenants and conditions therein contained.

Osmun, on November 17th, 1892, conveyed by the usual deeds of conveyance of bargain and sale the leased premises to George W. Robinson. Robinson, April 19th, 1893, conveyed the one-sixth part thereof to John H. Dahlke. Dahlke, on the same day, conveyed this one-sixth part thereof to Joseph M. Roseberry. Roseberry, on April 18th, 1894, conveyed the one-twelfth part thereof to Robinson. On the same day Roseberry conveyed the other twelfth part which he owned back to Dahlke, so that at the commencement of this action Robinson and Dahlke were the owners of the land and the reversion and the defendants were in possession thereof under the mining lease. Before the plea was filed in the cause the Enterprise Mining and Transportation Company had become insolvent, and the plea was filed by William O'Neill, receiver of said company. Boys not claiming possession, failed to file any plea and judgment by default was taken against him.

The facts out of which it is alleged the forfeiture arose occurred during the joint ownership of Robinson and Roseberry, the title of Dahlke being in nowise concerned save as a formal party entitled to take advantage in this action of any forfeiture if it had occurred. All the facts in relation to non-payment of royalties, forfeitures and waiver occurred between the defendants and Robinson and Roseberry. No question is raised as to defendants' possession of the premises, both at the time when the alleged right of action of the plaintiffs accrued and at the time of the commencement of this action,

nor is there any dispute but that the title to the premises and the reversion is vested in the plaintiffs in this action.

The first objection is on the part of the defendants that, assuming that there was a forfeiture of the lease and a right of re-entry, and to maintain this action, that Osmun, the original lessor, alone can take advantage of the forfeiture. This objection is controlled by statute in this state. This act is entitled "An act enabling grantees of reversion and lessees mutually to avail themselves of covenants and conditions." *Gen. Stat.*, *p.* 880, §§ 135, 136. Under this statute the grantees of Osmun of the premises and the reversion have the same right as Osmun had to take advantage of a forfeiture. By this statute the rule of the common law was changed and the grantee of the lands and of the reversion is given all the rights of re-entry for non-payment of rent or other forfeiture that lessor or grantor might have exercised. 4 *Griff. L. R.* 1308 ; *Field* v. *Mills*, 4 *Vroom* 254 ; *Suffern* v. *Butler*, 4 *C. E. Gr.* 202; *Fulton* v. *Greacen*, 9 *Stew. Eq.* 221 ; *Union Brick and Tile Manufacturing Co.* v. *Lorillard*, 17 *Id.* 1 ; *Watson* v. *Idler*, 25 *Vroom* 467 ; *Richman* v. *Lippincott*, 5 *Dutcher* 44 ; *Southard* v. *Central Railroad Co.*, 2 *Id.* 21.

Another objection to the recovery in favor of the plaintiffs is that they made no demand for the payment of the royalties due and unpaid before bringing this action of ejectment. The answer to this objection is that if a forfeiture occurred then it was within the option of the plaintiffs, or rather Robinson and Roseberry, to demand and accept the royalties unpaid, out of which the forfeiture arose, and thus waive the forfeiture, or to insist upon the terms of the lease, which with the facts constituted the forfeiture. Robinson and Roseberry were in nowise bound to waive a forfeiture if the facts existed creating it. If the forfeiture existed then the lease became null and void, the right of possession of the defendants had ended and this was a situation upon which Robinson and Roseberry could rest as an authority to re-enter or maintain ejectment. If they desired to insist upon the situation created by the defendants, a demand for the rent and a payment of it

would be a waiver of that situation and of the forfeiture which grew out of it. A demand for the rent would have been an absurd or anomalous position if they desired to maintain their rights upon a forfeiture created by the express terms of the lease. No demand was necessary either for the rent or for the possession before commencing the action. The right of action accrued by the terms of the lease itself, whenever the situation provided for in the lease creating a forfeiture was found to exist. When a forfeiture was discovered by the plaintiffs they were not bound to take any steps which might lead to a waiver. Their right then was, at their option, to insist upon the forfeiture. They were not bound to make any change in the situation whatever, and it was only by a rigid insistment of the situation remaining unchanged after forfeiture was discovered that the plaintiffs could be permitted to insist upon its legal force and effect.

The next question in order which arose in the case was whether there had been a forfeiture of this mining lease. The learned trial justice held, as a matter of law, that a forfeiture had been established, and so directed the jury. The facts were not in dispute that, at least, for the quarter ending June 30th, 1893, there had been royalties received, which had not been paid, in excess of the $100 provided to be paid quarterly in any event. The fact also was established, and without dispute, that the royalties due and unpaid for the quarter ending September 30th, 1893, were quite largely in excess of the payment of the $100 so as aforesaid reserved to be paid each quarter. The amount appears to be $356.66 in excess of the two quarterly payments of $100 each. This amount remained due and unpaid on September 30th, 1893, for the sales and deliveries of ore to that extent previously made, and due and payable at these dates under the lease, which provides that these royalties should be paid every three months after sales and deliveries. Upon these facts, the learned trial justice directed the jury that there had been a forfeiture.

Without citing the exact language of the learned trial justice at the Circuit to the jury, the charge was, in substance, that the failure to pay the royalties in full, within three months from the time the ore was sold and delivered to the purchaser or purchasers, forfeited the lease, inasmuch as there were quarters of years, or periods of three months, in which there was ore mined in excess of the $100 due for royalty in every three months, and when this was so, Robinson and Roseberry were entitled to receive the total amount of royalty for such quarter, and that the failure to pay such royalties in full operated as a forfeiture of the lease. Now, notwithstanding the forcible argument of counsel for the defendant in his construction of this lease, it seems that this conclusion of the trial justice arises by no implication whatever, but is derived from the plain and express language of this lease; the provision of the lease is clear that these royalties, not the $100, must be paid every three months after sale and delivery—not at the end of the year, but every three months—and it is equally clear in another provision of the lease that the $100 must be paid quarterly, that is, $400, in quarterly payments, and only deducted in each year when the royalties exceed that sum, and it follows, necessarily, that the whole amount of the royalties must be paid within three months after sale and delivery, deducting, of course, the $100 paid quarterly. The conclusion reached by the trial justice was upon the undisputed evidence that there were quarters when there was more than $100 due and payable as royalties, and as there were never more than $100 paid or tendered to be paid at the end of any quarter, the failure to pay such royalties in full operated as a forfeiture.

The conclusion reached is that this direction to the jury was in accordance with the express provisions of the lease.

That the payment of the royalties was a condition, the non-performance of which defeated the lease, was not disputed. It was a condition subsequent, but its non-performance had all the effect of defeating the estate granted or rendering the

agreement null and void and as if it had never existed. *Tayl. Land. & T.*, § 271.

A grant with a proviso to pay a certain rent by a certain day, and unless done the estate thereby granted should be void, is a condition, and upon the non-performance of which the grantor may re-enter. 4 *Kent Com., p.* 123, § 11. There is no need of an express clause of re-entry. *Tayl. Land & T.*, § 291. Actual entry is no longer necessary; the right to re-enter is all that is required. *Cornelius* v. *Ivins*, 2 *Dutcher* 376; *Ad. Ej.*, § 11, *note* 1. "For the avoidance of a lease or term of years, such precise words of condition are not so strictly required as in case of a freehold of inheritance." *Co. Litt.*, § 330. "And the reason is that a lease for years is but a contract, which may begin by words and by words be dissolved." *Ibid.*

The question of whether the forfeiture was waived by Roseberry or not was, by the trial justice, submitted to the jury, and upon that question the verdict of the jury was made to depend. The court charged the jury that if Roseberry had waived the forfeiture, it made no difference whether Robinson had waived the forfeiture or not, the verdict must pass for the defendant. The jury were instructed that Robinson had not waived the forfeiture, because the fact was undisputed that after the discovery of the forfeiture, by reason of the non-payment of the royalties, especially after the failure in payment of September 30th, 1893, Robinson had never accepted any further payment, but, on the contrary, when further payments, but not all that was due, had been tendered to him personally, he had refused to accept them, and at all times after the forfeiture occurred insisted upon his right to consider the lease at an end. These facts were undisputed, and the learned trial justice was correct in saying that as to him no waiver of the forfeiture existed.

It was in evidence that Roseberry received two small payments after September 30th, 1893. One of $16.67 was made on December 30th, 1893; the other, for $16.67, was made on March 29th, 1894. These sums represented the one-sixth

part of the quarterly payments of $100 each due on those days. The trial court charged the jury that if he had knowledge of the forfeiture, this was a waiver of non-performance of the condition of the lease out of which the forfeiture arose, and the verdict would be for the defendants against both of the plaintiffs. Whether Robinson had waived it or not would be immaterial. He would in any event be bound by the waiver of Roseberry. There was much evidence in the case upon the point in dispute, whether Roseberry had any knowledge whatever that any greater amount was due and unpaid in excess of the sums that he received. Under the provisions of the lease the defendant was to keep the account of the sales and deliveries. This account seems never to have been revealed to Roseberry, or at least there is much dispute of evidence on that subject. No question arose at all but that much larger amounts were due and unpaid. Whether he had knowledge of these facts out of which the forfeiture arose was a much controverted question. It was a question of fact proper to be submitted to the jury for their determination. If he was possessed of such knowledge, then the verdict was to be for the defendant. If he had no such knowledge, then the jury could find for the plaintiff; or in other words, if there was a waiver of the forfeiture by Roseberry, the verdict would pass for the defendants and against the plaintiffs.

Upon questions of this character, knowledge of the facts out of which the forfeiture arises is essential to waiver. Without such knowledge a waiver cannot be said to be established or exist. Waiver could only be found upon knowledge that the condition of the lease was broken. *Tayl. Land. & T.,* §§ 497, 499. The forfeiture must be known as one of the essential elements of waiver. *Dendy* v. *Nicholl,* 4 *C. B.* (*N. S.*) 376; *Collins* v. *Hasbrouck,* 56 *N. Y.* 157, 164; *Murray* v. *Harway, Id.* 337; *Conger et al.* v. *Duryee,* 90 *Id.* 594; *Crofts* v. *Lumley,* 4 *El. & B.* 608; 8 *Eng. Com. L.* 647, 648.

Waiver is where one in possession of any right, whether conferred by law or by contract, with knowledge of the mate-

rial facts, does or forbears doing something inconsistent with the right, or of his intention to rely upon it, thereupon he is said to have waived it and he is precluded from claiming anything by reason of it afterward. *Bish. Cont. (ed.* 1887), § 792. It must be made with knowledge and intent to waive. *Bennecke* v. *Insurance Co.,* 105 *U. S.* 355.

The question here being one of knowledge and intent, and the evidence being much disputed, and the acts upon which it was contended it was established being of an inconclusive nature, it was a question for the jury. *O'Key* v. *State Insurance Co.,* 29 *Mo. App.* 105, 111 ; *Fitch* v. *Woodruff, &c., Iron Works,* 29 *Conn.* 82; *Fox* v. *Harding,* 7 *Cush.* 516 ; *Traynor* v. *Johnson,* 1 *Head.* 51.

The cause was properly submitted to the jury, and the verdict was, upon this, the vital question of the case, one supported by the evidence.

The rule to show cause must be discharged, with costs.