## John Rapp v. Jennings State Bank.

(Filed  September  6,  1906.)

**SALES—Conditional—Acceptance.** An acceptance of machinery under
a  contract  to  manufacture  the  same  complete  and  put  in
running  order,  before  the  same  is  completed,  in  order  to  bind
the  parties  must  be  unconditional  and  unqualified,  and  intended
as  such  where  it  modifies  the  terms  of  the  original  agreement;
and  unless  so  accepted  an  action  will  not  lie  on  the  contract  of
purchase  to  recover  the  purchase  price  thereof.

(Syllabus  by  the  Court.)

*Error  from  the  District  Court  of  Pawnee  County;  before
Bayard  T.  Hainer,  Trial  Judge.*

*McGuire  &  Clark* and *Fred  S.  Liscum,* for plaintiff  in
error.

No appearance for defendant in error.

Opinion of the court by

Gillette, J.:    This was an action brought in the court
below to recover upon three promissory notes, one for $305.00
and two notes of $275.00 each, the purchase price of certain
mill  machinery  and  a  gasoline  engine,  executed  March  6,·
1901.

The defendant, to secure payment of these notes, gave
a mortgage upon his farm, and a chattel mortgage, upon all
the machinery purchased.  The petition prays judgment for
the amount of the notes, and a foreclosure of both mortgages.

The answer admits the execution of the instrument sued on, but denies consideration therefor. The instruments were non-negotiable, and defendant's defense therefore good as against the plaintiff bank, to whom the notes had been assigned, the notes containing conditions which destroy their negotiability, and the president of the bank being one of the contracting parties in the sale of the machinery.

It appears from the evidence offered upon the trial that the defendant in the court below, now plaintiff in error, in October, 1900, executed the notes sued on at the solicitation of Trees & Canfield machine manufacturers at Jennings, O. T., under the following circumstances:

Mr. Canfield, of the firm, held obligations against certain mill machinery then in a building at Crystal, O. T., which town of Crystal was situated on a part of what had been Mr. Rapp's farm, on property controlled by Mr. Canfield.

In October 1904, defendant Rapp, being at Trees & Canfield's machine shop at Jennings, Mr. Trees suggested to him that if he had a gasoline engine like one they were using, or bigger, he could buy the mill at Crystal and run it, and he stated in reply that if he could make a bargain with Canfield for the mill, he would also buy a gasoline engine from them, and an agreement to that effect was entered into, the defendant then and there executing his promissory notes therefor, and in consideration of Trees & Canfield's verbal promise to build a gasoline engine for him of sufficient power to run said machinery as quick as they could.

Trees & Canfield failed to build the engine by the time the first note came due Feb. 1, 1901, and afterwards, on

March 6th, the defendant being about to go to the state of Missouri for the summer, asked to have the notes taken up and new ones given falling due in the future, the first one to fall due on Sept. 1901, which was agreed to.

At this time it was suggested to the defendant that Trees & Canfield would give him $95.00 for the use of the engine then partly constructed for the summer, and he was asked to sign a written lease or agreement to that effect. This he objected to because the engine was not finished and would not be his until it was finished and at work in connection with the mill machinery for which purpose it was purchased. Canfield told him it would be his when it was finished, and wanted him, as a matter of form, to sign a lease for the use of it during the summer, which he did. This lease, or rental contract, whatever it was, is not shown in the evidence, and is referred to in the record simply as a lease, without proof of its terms, its loss, however, being accounted for.

In June following defendant returned from Missouri, asked for his engine, and was informed that it was not fin-ished, but could be ready for him on three days' notice. The defendant answered that he would be ready to receive it on the following Friday, six days from that time.

The engine or mill machinery was never delivered, so far as the record shows, and there is no evidence showing that the engine was ever completed. The action was tried to a jury, and at the close of defendant's testimony the trial court sustained a demurrer to the evidence offered in defense, as we suppose from the record upon the theory that the lease of the engine under the circumstances was an acceptance

thereof, and amounted to an agreement acknowledging a completed contract, withdrew the case from further consideration of the jury and entered judgment for the foreclosure of both the real and chattel mortgages, and ordered a sale of the property to satisfy the judgment.

Motion for a new trial was overruled, and the case comes to this court upon error in the determination of the court below.

It will be observed that the engine was not completed at the time this lease agreement was entered into, nor in fact four months later, when the defendant demanded possession of it.

There is no proof that it was sufficient to run the machinery for which it was purchased, and we think it a violent presumption to hold that the lease agreement solicited by Trees and Canfield was when accepted, intended by the defendant as an acceptance of the entire machinery, which had never been delivered to him. The lease at most refers only to the gasoline engine. There was no tender of the possession of the mill machinery, and no conversation had at the time touching its delivery. The notes when executed were wholly without consideration, as nothing of value was delivered therefor except the promise of Trees & Canfield to build a gasoline engine at some time in the future, and attach it to the mill machinery at Crystal, and thereafter deliver the completed mill to defendant when shown to be in good running order. Nor, so far as the record shows, was the consideration for the lease ever paid, tendered or endorsed upon the notes.

The defendant in error has not favored us with a brief or statement informing the court upon what theory he relies for the confirmation of the determination of the court below.

We assume that the judgment of the court below must be affirmed, if affirmed, upon the theory that the lease executed at the time that the new notes sued on were executed amounted in law to an acceptance of the machinery as it then was, and was at that time, by force of the lease, a completed contract.

An acceptance, to be good, must, of course, be such as to conclude an agreement or contract between the parties, *i. e.,* an acceptance to bind the parties must be unconditional and unqualified, and intended as such where it modifies the terms of the original agreement. *Binnecke v. Insurance Co.* 105 U. S. 355.

To hold that the lease at the time of its execution and under the circumstances then existing was intended as a waiver of the original contract to construct the machinery and was an acceptance of the unfinished machine, and amounted to a delivery of the undelivered mill would be doing violence to sound reason, and such construction could not be given the transaction except upon proof satisfactory that such was the intent of the parties. It might, and probably would amount to a waiver of damages for a failure to deliver the property in due time or within a reasonable time but to say that it amounted in law to a present delivery and acceptance of the unfinished machinery would be carrying the rule to an extent beyond any authority we have been able to find.

Whether or not the transaction was intended by the parties at the time as a closing of the unexecuted agreement existing between them is a question of fact, which the defendant in the action had a right to have submitted to the consideration of the jury under the instructions of the court governing their deliberations upon that subject, and a failure so to do was in the judgment of this court an error requiring the reversal of the case:

This case is therefore reversed, and the cause remanded with instructions to set aside the order overruling the motion for a new trial, and to allow the same.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.