## ORR v. MUTUAL LIFE INS. CO. OF NEW YORK.

### No. 9523.

Circuit Court of Appeals, Eighth Circuit.
March 24, 1933.

William S. Hogsett, of Kansas City, Mo. (Charles A. Orr, Chester L. Smith, Ralph E. Murray, and Alvin C. Trippe, all of Kansas City, Mo., on the brief), for appellant.

William C. Michaels, of Kansas City, Mo. (Frederick L. Allen, of New York City, and Mcservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., on the brief), for appellee.

Before STONE, VAN VALKEN-BURGH, and BOOTH, Circuit Judges.

STONE, Circuit Judge.

In 1920 appellant took out a life insurance policy with appellee. This policy contained a provision whereby, if insured became totally and permanently disabled, monthly benefits would be paid him and further premiums on the policy waived. On April 27, 1925, insured became totally and permanently disabled. In ignorance of the disability clause in the policy, insured continued to pay premiums and made no claim until September, 1931. Notification and claim were made promptly thereafter. On December 2, 1931, the insurer issued insured a certificate waiving payment of the premium due and paid on September 22, 1931, and shortly thereafter refunded that premium. The same check included $1,300 in payment of monthly benefits from December 4, 1930. Premiums have been waived and benefits paid

for the time subsequent to the notice and claim. The controversy is solely over refund of the premiums due and paid between April 27, 1925 (date of disability) and September 22, 1931 (the date of the refunded premium), and over-payment of the monthly disability from April 27, 1925 (date of disability) to December 4, 1930 (beginning date of payments by company). There is no dispute as to the facts which fully appear in the pleadings. The court sustained a motion by appellee for judgment on the pleadings. From that judgment is this appeal.

Two issues are argued here. The first is whether appellant is entitled to the disability payments and premium waiver from the date of the disability or only from the date when proof of disability is furnished appellee. The second is, if the above right dates from furnishing of proof, whether appellee has waived this requirement, and the delay in furnishing proof.

## I.

### The Policy.

The first of these issues is to be determined by the provisions of the policy. The pertinent part of the policy is as follows:

"Benefits in the Event of Total and Permanent Disability before Age 60.

"*When* such Benefits take Effect.—*If the Insured,* after payment of premiums for at least one full year, *shall,* before attaining the age of sixty years and provided all past due premiums have been duly paid and this Policy is in full force and effect, *furnish due proof to the Company at it's Home Office either (a) that he has become totally and permanently disabled by bodily injury or disease,* so that he is, and will be, permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation, or (b) that he has suffered any of the following 'Specified Disabilities' (which shall be considered total and permanent disabilities hereunder), namely, the entire and irrecoverable loss of the sight of both eyes or the severance of both entire hands or of both entire feet or of one entire hand and one entire foot, *the Company, upon receipt and approval of such proof, will grant the following benefits*:

"*Benefits.*

"1. Waiver of Premium.—*The Company will,* during the continuance of such disability, *waive payment* of each premium as it becomes due, *commencing with the first premi-*um *due after approval of said due proof. Any premium due prior to such approval by the Company must be paid in accordance with the terms of the Policy,* but if due after receipt of said due proof, will, if paid, be refunded upon approval of such proof.

"2. Income to Insured.—*The Company will,* during the continuance of such disability, *pay to the Insured a monthly income* at the rate of ten dollars for each one thousand dollars of the face amount of this Policy (but not including dividend additions), *the first such monthly payment being due on receipt of said due proof* and subsequent payments on the first day of each calendar month *thereafter,* if the Insured be then living and such disability still continue. *No income payments, however, will be made prior to approval of such proof by the Company as satisfactory, but upon such approval, whatever income payments shall have become due will then be paid and subsequent payments will be made when due."* (Italics inserted.)

There is no possible ambiguity in this language. It means just one thing and that is that waiver of premiums *commences* "with the first premium due after approval of said due proof" and that, as to payment of monthly benefits, the "first such monthly payment being due on receipt of said due proof." There are no other statements in the policy which, in the slightest degree, qualify or weaken or throw doubt upon this language. Since "contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense" (Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 492, 52 S. Ct. 230, 231, 76 L. Ed. 416), this contention must be resolved against appellant.

Appellant relies strongly upon Minnesota Mut. Life Ins. Co. v. Marshall, 29 F.(2d) 977 (this court), as supporting his construction of this provision of this policy. The wording of the policy there involved is not the same as here and is far from being so clearly expressed. There, this court deemed an ambiguity to exist and properly resolved the construction in favor of the insured. There is no ambiguity in the present policy.

## II.

### The Waiver.

Appellee contends that waiver is no issue in this case because it must be and is not pleaded. We do not agree. Without discussing the necessity of pleading waiver, it

is clear that such was pleaded. After setting forth certain acts of appellee, appellant pleads, in paragraph number "7" of the petition, that "by reason of all the facts aforesaid defendant has waived any and all right to object to lack of any other or earlier notice and/or proof of said disability, and is estopped now to assert any such objection or defense, or to assert a forfeiture of plaintiff's claim herein sued for, upon that or any other ground."

The facts relied upon to establish waiver or estoppel are as follows: On September 25, 1931, insured wrote requesting "form of application for total disability." Appellee replied that blanks would be sent "but we should first like to know when you became disabled"; suggesting that appellant read his policy which provided for disability, "the first payment being due after receipt of proofs of disability"; and requesting advice as to date of disability and attending physicians to date "because it is necessary to secure a statement from each one in addition to a statement signed by you as the insured." Appellant replied that the disability began "in the month of April, 1925"; detailed the circumstances in connection therewith from inception to date; named the attending physicians; and requested necessary blank for submitting claim "for all the benefits of total disability as provided for in my policy." Appellee replied, noting the disability "for several years"; inclosing blanks for insured and each attending physician "for the purpose of furnishing the Company information on this matter"; and suggesting prompt action to secure early "advice from the Home Office as to payment of disability benefits." Appellant and the attending physicians made out the statements on the blank forms and they were delivered to the local office (Kansas City, Mo.) of appellee and by it forwarded to the home office, in New York, on November 2, 1931, and received there on November 4, 1931. On November 2, 1931, appellee's "medical referee" (in Kansas City) directed its examining physician (near appellant's home) to examine appellant and report and also wrote appellant to get in touch for this examination "in regard to your claim for disability with this Company." This examination was made on November 3, 1931, and the report of the examiner received at the home office on November 6, 1931. Later in November, a "field inspector" was instructed to and did further investigate and his report was received at the home office on November 24, 1931. The proper officials at the home office considered the above proofs sufficient and in-structed its local manager at Kansas City to refund the premium paid September 22, 1931, and to pay monthly benefits beginning with December 4, 1930. In compliance therewith, the manager, on December 4, 1931, sent insured a check which covered the above premium refund and monthly benefits covering the period since December 4, 1930. There was further correspondence to the effect that appellant declined the check and claimed payment from the date of disability; that appellee explained that, under the strict terms of the policy, payment was due only from receipt of claim, on November 4, 1931, but that under certain "rules" of the company the back payment of benefits for eleven months prior to that date and the refund of the premium within a year of that date had been made and that the check and future payments might be accepted without prejudice to the position of either party. The "rules" intended came about as follows: On August 27, 1930, a standing committee of the company adopted a resolution reciting changes made from time to time in the disability provisions of its policies and the desire to conform its "practice regarding the admission of disability claims on policies issued prior to July 1, 1930," so as "to conform to the provisions of the disability clauses in the July 1, 1930, policy forms" in certain respects. In pursuance of this resolution, circular letters were sent its local managers. The here pertinent portions of such letters are as follows:

### "Disability Benefits

"In order that the practice of the Company with regard to its former policies may conform, as far as is practicable, with the provisions of the new Disability Benefits Clause (July 1st, 1930, form containing standard provisions required by the Insurance Commissioners) certain changes have been made, effective September 1, 1930, as follows: * * *

"(2) Antedating Benefits When Proofs Delayed: The provisions of the new form will apply to all policies not containing the 1926 form of benefits; in particular, any premium will be waived or income payment will be made which would have been waived or made, as the case may be, if proofs had been received promptly, provided—

"(a) that the due date of such premium is not more than one year prior to the date of receipt of notice of claim.

"(b) that in the case of a policy providing for monthly disability income a monthly payment cannot be allowed which would have

been due more than eleven months prior to the date of receipt of such notice. * * *

"(4) The above paragraphs should not be interpreted to provide in any case for the making of any income payment or waiving of any premium which would not have been made or waived under the terms of the original contract if there had been no delay in making claim for benefits. * * *

"It is understood that this practice may be modified at any time in the future."

The existence of this "practice" was unknown to appellant until toward the end of these negotiations and he places no reliance thereon.

On the above facts, the contention of appellant is as follows:

"By putting plaintiff to the trouble and expense of furnishing proof of disability covering the full period of disability, *after knowledge that the disability had lasted for six and a half years,* and by accepting the proof without objection and by approving the same as satisfactory, the defendant waived its alleged right to insist on proof as a condition precedent to the accrual of benefits for that period of time. By its independent investigation through its own medical department and investigator it established the fact to its own satisfaction that plaintiff's claimed total disability was genuine, and had persisted for six and a half years. On the strength of the facts shown by the proof of disability and its own examinations, the defendant entered into an attempted adjustment of plaintiff's claim, *and tendered him benefits for the last eleven months of disability prior to the furnishing of proof.* These acts and conduct on defendant's part operated as a clear waiver of its alleged right to insist on the furnishing of proof as a *condition precedent.*

"And granting (in the absence of a policy requirement that proof shall be furnished within a *specified* time) that plaintiff was required to furnish proof within a *reasonable* time after disability began, then we contend that by its aforesaid conduct defendant also *waived the delay in furnishing proof,* and is estopped now to say the proof was furnished after a reasonable time.

"To say the least, these questions of waiver were questions of fact for the jury, and should not have been decided against plaintiff as a matter of law." [1]

[1] In appellant's reply brief the same contention is stated as follows:

"Plaintiff's petition and also defendant's answer alleged specifically and in detail the facts constituting waiver and estoppel, including the following:

1. That defendant after having notice that plaintiff was claiming benefits for disability covering a period of six and a half years, furnished plaintiff with blanks and required plaintiff to furnish defendant with proof of said disability, including written statements of plaintiff and of all physicians who had attended him during the six and a half years of his disability.

2. That defendant, after having received such blanks showing disability of six and a half years' duration, required plaintiff to submit to physical examination by defendant's physician, and to an examination by defendant's field inspector.

3. That defendant put plaintiff to trouble and expense in complying with these requirements.

4. That upon the receipt of all these proofs, defendant accepted the same as satisfactory.

5. That defendant in recognition of the validity of plaintiff's claim and the timeliness of furnishing said proof entered into an attempted adjustment of plaintiff's claim."

■■■ It will be noted there is no direct express waiver relied on. The waiver must be sought in the course of conduct of appellee. There can be no waiver without an intention to waive. While an estoppel may result from conscious conduct without a definite intention if it naturally results in a disadvantageous change of position in another, yet waiver is not possible without an intention (Bennecke v. Ins. Co., 105 U. S. 355, 359, 26 L. Ed. 990). It has been said that "the question of waiver is mainly a question of intention, which lies at the foundation of the doctrine" (40 Cyc. 261). It is not enough that the party asserting the waiver so understood the conduct of the other party for "he must clearly show not merely his own understanding, but that the other party had the same understanding" (Bennecke v. Ins. Co., 105 U. S. 355, 360, 26 L. Ed. 990).

■ The search here is, then, for an intention on the part of appellee to waive the provision of this policy which provided that premiums should cease after approval of a claim for permanent and total disability and benefit payments should begin after receipt of such claim. We seek such intention in the expressions and acts of appellee. If such expressions and acts affirmatively evince such intention or if they are inconsistent with an intention to retain the benefits of the policy provisions, we may regard the waiver as existent or, at least, its existence a question for the jury. Its expressions are in the letters set forth in the pleadings. The first letter by appellee is in response to a bare request for blanks on which to make proof of such disability. In this letter, direct attention is called to the policy provision as to beginning of benefits as being "the first payment being due after receipt of proofs of disability." Also, request is made for date of disability and names of all attending physicians. Obviously, such request is not inconsistent with the other above noted part of the letter and is

purely for the purpose of promoting the proper proof of the claim. Apparently, appellant's answer to this letter contained the first information to appellee that the disability was of some years duration. From then on to allowance of the claim, appellee proceeded in a regular manner to aid appellant in perfecting his proof and in making its own investigation. There is no word in any of its correspondence suggesting a change of mind from its first letter calling attention to the provisions of the policy. Having approved the proofs and claim, appellee sent its check. This check covered not only disability for the current month (December, 1931), under the terms of the policy, but it also included payments for the eleven months preceding and refund of the premium paid something over two months before. These back payments were not within the terms of the policy and were inconsistent therewith. Why was this done? It was not done in recognition of any claim by appellant that he was entitled to payment from disability because, so far as this record shows, no such claim had been made and because it was materially less than any such claim. It was not in compromise for there does not appear any dispute, at that time, as to the amount due. It was not done in waiver of proofs of loss for such had been required, made, and acted upon. In the letter (December 4, 1931) transmitting the check, the payment is said to be "in accordance with the disability clause in the above policy." On December 8th, and before hearing from appellant, appellee wrote another letter. The only purpose of this letter was, obviously, to make clear the payment. It does this by stating that "according to the Company's rules pertaining to such matters the Company could not pay any benefits which would have become due more than eleven months prior to the receipt of notice of claim to the Home Office in New York City, nor could we waive any premium which became due more than one year prior to the notice of claim." When the check was returned by appellant in a letter claiming benefits from date of disability, that letter was sent to the home office for advice and resulted in the letter of December 19th, wherein appellee stated:

"We quote below certain portions of the disability clause in your policy which you should carefully examine for your information. We request that you read these paragraphs carefully and you will see that the Company has paid more than that called for by the contract.

"Certain parts of the quotations of the policies are underlined in order to emphasize that part that should have your particular attention. As stated in our letter to you dated December 8th, the Company received notice on November 4, 1931, of your disability which was the first notice received at the Home Office of the Company. To substantiate this, we have at this office a letter dated November 6, from the Home Office acknowledging receipt of disability claim. Medical examination was forwarded Home Office on November 4, and on December 1, Home Office advised us that your claim had been approved for payment including premium refund.

"If the Company had acted only according to the provisions of the policy, the disability benefits would not have commenced before November 4, 1931, the date of receiving insured's statement of disability.

"Instead of starting the payments on that date the benefits allowed you, commenced on December 4, 1930, and in connection with such benefits the Company waived and refunded the premium which was due September 22, 1931, and paid by you."

■ It seems clear that no intention to waive the policy provisions can be found in any or all of these provisions except as to the eleven months and the one premium. The extent of this waiver is clear and undisputable. One who waives a right is under no legal obligation so to do and he may determine to what extent or in what respect he will do so and if such extent or respect clearly appears neither can be expanded beyond such intention. Nor is it of legal consequence why he placed limitations upon the waiver provided such limitations clearly appear. As matter of fact, the reason clearly appears in this case. It was in pursuance of a general practice (quoted above) theretofore adopted by appellee for the purpose of harmonizing its earlier policies (of which this policy was one) with its policy form adopted July 1, 1930. This practice became no part of this policy and payments under the practice (not required by a policy) were pure gratuities, in a legal sense, though sound business policy and benefits may have induced such action.

When we turn from expressions to acts, we find appellee doing nothing except investigating the claim and making the above payment. The payment has been discussed above. The investigation would have been normal even had appellee no thought of departing from the policy. The matters to be determined were the totality and the permanence of the disability. Obviously, a knowledge of the entire history of the disability as

well as the present condition very materially bore on whether the disability was total or was permanent—particularly the latter. In view of the "rule" of practice to make certain back payments there was additional reason for such investigation.

The evidence shows no intention of appellee to waive entirely the provisions of the policy. Nor is there ground for an estoppel. Appellant has not changed his position because of any acts or expressions of appellee. He has been put to the trouble and some expense of establishing proof of disability but that would have resulted in any case and without the slightest waiver existing. There has not been even delay. His first letter was received November 2, 1931, and the check was sent December 4th. The correspondence reveals a commendable promptness in handling and disposing of the matter.

### Conclusion.

The judgment of the trial court was right and should be and is affirmed.