SIMON J. AHERN, Appellant, v. WILLIAM H. GOODSPEED, Impleaded, etc., Respondent.

Representations made by one offering to sell property to another negotiating therefor are part of the *res gestæ*, and binding upon the maker, although a bargain is not concluded at the time, if afterwards, as a continuation of the negotiation, the person to whom they were made becomes a purchaser.

An agent authorized to sell property, in the absence of any express limitation of his powers, is authorized to do any act or to make any declaration in regard to the property found necessary to make a sale and usually incidental thereto.

aintiff, being indebted to B. & Co., note-brokers, placed in their hands his promissory note to be sold at a discount of twelve per cent, and proceeds applied on his account. Defendant G. purchased the notes of B. & Co. at the discount stated, upon the representation by B. & Co. that they were first-class business paper. In an action, among other things, to compel the cancellation of the notes as usurious; *held*, that the notes had no inception until they were passed to G., and were therefore usurious; but that B. & Co. were the agents of plaintiff in making the sales; that he was bound by their representations, and so was estopped from setting up usury.

Prior to the execution by plaintiff of any note, and before B. & Co. had received any authority to sell, G. applied to the latter to purchase notes, stating he wanted first-class business paper. B. & Co. stated that they would have paper of that kind, mentioning plaintiff's name. They subsequently procured a note from plaintiff, with authority to sell and apply on their account, he knowing at the time that it was to be sold at a discount of twelve per cent, in pursuance of a prior negotiation on the part of B. & Co. This note B. & Co. sent to G., who purchased, and the avails, less their commission for sale, were passed by B. & Co. to plaintiff's

Statement of case

credit, and statement of sale made to him. Plaintiff had been a large purchaser of paper from B. & Co., and knew their method of effecting sales, and that it was customary for the buyer to exact representations that paper sold was business paper. *Held,* that the facts justified a finding that the note was purchased in reliance upon representations by B. & Co. that it was business paper, and also that there was a ratifiaction by plaintiff of the acts and declarations of B. & Co.

(Argued December 10, 1877; decided January 15, 1878.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term. (Reported below, 9 Hun, 263.)

This action was brought to have three promissory notes made by plaintiff payable to his own order, and indorsed by him, declared void for usury, to compel a cancellation thereof and return of certain stock pledged as collateral, and for an injunction, receiver, etc.

The notes were delivered by plaintiff to Bound & Co., note-brokers in the city of New York, of whom plaintiff had been in the habit of purchasing commercial paper to a large amount, and to whom he was indebted upon account, to be sold at a discount of twelve per cent, and the avails to be applied upon plaintiff's account. Bond & Co. sold the notes to defendant Goodspeed at the rates stated. The circumstance of the sale, and the further facts appear sufficiently in the opinion.

*M. W. Devine,* for appellant. The notes and transfers of stock as security therefor, were void for usury, and plaintiff is entitled to have them surrendered and canceled. (Laws of 1837, chap. 430, p. 486; 4 Edm's Stat., 459; *Thompson* v. *Van Vechten,* 27 N. Y., 568; *Price* v. *Lyons Bk.,* 33 id., 55; *Mason* v. *Lord,* 40 id., 476; *Fish* v. *De Wolf,* 4 Bosw., 573; *Tuthill* v. *Davis,* 20 J. R., 285; Tyler on Usury, 396; *Catlin* v. *Gunter,* 1 Kern., 368.) The declarations of an agent, when not expressly authorized by his principal to bind him,

must be within the scope of his agency. (*N. Y. L. Ins. & Trust Co.* v. *Beebe*, 3 Seld., 364; *Jackson* v. *Fassit*, 33 Barb., 645; *Roonie* v. *Nicholson*, 8 Abb. Pr. [N. S.], 343.) The evidence did not show that plaintiff authorized Bound & Co. to sell the notes, and plaintiff was not estopped from setting up usury. (*Gant* v. *Morse*, 22 N. Y., 323; *Davis* v. *Spencer*, 24 id., 386; *Brush* v. *Lee*, 36 id., 49, 52; *Draper* v. *Stonvenall*, 38 id., 219; *Fellows* v. *Northrup*, 39 id., 117; *Ostrander* v. *Fellows*, id., 350; *Mason* v. *Lord*, 40 id., 477; *Wekman* v. *Childs*, 41 id., 159; *Putnam* v. *Hubbell*, 42 id., 106; *Burgess* v. *Simonson*, 45 id., 225; *Matthews* v. *Coe*, 49 id., 57; *Sheldon* v. *Sheldon*, 51 id., 354.) Defendant, Goodspeed was chargeable with the knowledge of Bound & Co. that the notes were not business paper. (Story on Agency, § 127; Paley on Agency [by Lloyd], 199 note; Smith on Merc. Law, H. & G., 161.) Any statements of Bound & Co., in reference to the first note on November twenty-first or twenty-second, after the completion of the transaction, did not bind or estop plaintiff; they were not part of the *res gestœ.* (Story on Agency, § 137; *Hubbard* v. *Elmer*, 7 Wend., 446.) The action was properly brought, and was within the jurisdiction of a court of equity. (*Peters* v. *Mortimer*, 4 Edw. Ch., 279; 37 N. Y., 444.)

*Richard H. Huntley*, for respondents. The representations of Bound & Co. in selling the notes were binding on plaintiff. (*Andrews* v. *Kneeland*, 6 Cow., 354; *Nelson* v. *Cowing*, 6 Hill, 336; Story on Agency, §§ 134, 137; *Ferguson* v. *Hamilton*, 35 Barb., 427; *Fenn* v. *Harrison*, 4 T. R., 177; 2 Add. on Torts, 1037; *Lawrence* v. *Taylor*, 5 Hill, 107, 113; Dunlap's Paley's Agency, 171 note *o;* *Bennett* v. *Judson*, 21 N. Y., 238; *Craig* v. *Ward*, 1 Abb. C. A. Dec., 454, 460; *Cooke* v. *Oxley*, 3 T. R., 653; *Mactier* v. *Frith*, 6 Wend., 103.) It cannot be urged that Goodspeed was put upon inquiry as to the notes. (*Mech. Bk.* v. *Foster*, 19 Abb., 47; *Adams* v. *Blancan*, 6 Robt., 334.)

FOLGER, J.   It cannot be successfully contended that the notes in question had an inception before they were passed to Goodspeed.   The indebtedness to Bound & Co. would have been a good consideration for them, and had that been merged in them, and they given as evidence of its existence (*Wilkie* v. *Roosevelt* 3 Johns. Cases, 66), they would have had an inception prior to the taking of them by Goodspeed. But they were not given for that indebtedness.   They were made for just the purpose for which they were used, to be sold at a discount of twelve per centum per annum.   The avails of the sale were to be applied on the indebtedness, and thus only was the indebtedness affected by them.   That being so, it is plain that they were taken by Goodspeed at a usurious discount; and that they are void, unless Ahern is estopped from setting up the usury.

An estoppel arises in such case, when the maker of the note, before the sale of it, has declared to the buyer that it is a business note, and the buyer has so acted thereupon, as that he will be harmed if the usury is shown.   Was Ahern brought within that rule ?   He did not in person make such declarations.   It is claimed that Bound &, Co. were his agents, and that they made such declarations acting as his agents, and with power to make them.   We will first see whether they did so represent, and then whether they had authority so to do, or if not, whether their act in so doing has been adopted and ratified by Ahern.

The trial court found that Bound & Co. made declarations to Goodspeed, at a time and of a purport sufficient to bring them within that rule, and that Goodspeed acted upon those declarations.   It is manifest that he would be pecuniarily harmed, if the usury is shown and the notes declared void therefor.   The plaintiff urges, however, that there was no evidence to sustain the finding above mentioned.   The testimony that the declarations were made by Bound & Co. is sufficient to sustain the finding in its substance, so far as the making is concerned.   Goodspeed asked of them for first-class business paper.   They said they had a good supply.   They opened

their book, and began to show their business paper.   He said
he wanted first-class business paper secured by collaterals.
They told him they had just the notes; some of that class of
paper; that is, as I read it, first-class business paper secured
by collaterals.   He had before that bought paper of them—
impliedly business paper.   It is shown that it was accom-
panied by collaterals.   They said that they would have some
more of that; that is, paper of that character; and then
mentioned the name of Ahern.   They did not mention his
name, I think, in that connection, as meaning to be under-
stood otherwise, than that paper made by him would be of
that character.   They said that they had some of that kind
of paper, and told him about the standing of Ahern.   I
think that the phrase, "that kind of paper," then used,
meant the same as the phrase, "that class of paper," just
before used, and that both referred to the kind of paper
which Goodspeed was asking for, viz., business paper.   If
the first note sold to Goodspeed had been present before the
parties, when this which I have detailed took place between
them, it would have been applicable to it, and would have
been in effect a declaration by Bound & Co., as to that note,
that it was business paper.   Goodspeed asked of them
business paper.   Had they held out to him this note, in
reply to his request, it would have been an act tantamount
to a representation, by them, that it was what he asked for,
or of the kind which he asked for—that it was business
paper.   That the note was not then before them, and that it
had not existence then, makes no difference with this part of
the case.   It was spoken of by them as though in being.
When it was made, and a statement of the sale of it to
Goodspeed sent to him, the sale and the statement were in
continuation of the same negotiation for business paper in
which it had been spoken of and characterized.   All that
had been before declared concerning it still attached to it, and
made a part of the continuous transaction.   It was taken by
Goodspeed, and sold by Bound & Co., as the note which was
the subject of offer by them, and of consideration by him,

and of his and their acts and declarations. It was taken by him in reliance thereon. Though at the hour, or during the day, of the making of a representation as to property offered for sale, the subsequent vendee, then negotiating for it, or the like of it, does not conclude a bargain for it, if he afterwards, as a continuation of the negotiation, becomes a purchaser, the representations are still a part of the *res gestæ*, and bind the maker of them. (See *per* Holt, C. J., *Lysney* v. *Selby*, 2 Ld. Raym., 1118–20; *Wilmot* v. *Hurd*, 11 Wend., 584.)· As to the other two notes, the testimony of Goodspeed is explicit that Bound & Co. told him, at the time of the sale of them, that they were business paper, and the best kind of business paper. From all that is testified to by Goodspeed, the inference is easy and natural that he would not have taken the notes, had he not believed that they were business paper; and that he so believed from what was said and took place between Bound & Co. and him.

The finding of the trial court that the representations were made was justified by the evidence. Bound & Co., if principals in the transaction, would have been estopped from setting up against Goodspeed that the transaction was usurious.

If Bound & Co. were agents of Ahern, with authority to make such declarations, and to do such acts concerning the notes, he also is estopped. Bound & Co. were not the agents of Goodspeed. He went to their place of business to buy of them what they had to sell for themselves or others. They did not own these notes. If they had owned them, the notes would have had an inception in their hands, and a different question would have arisen. So they did not sell them as their own. They sold them for a principal, who could be no other than Ahern. They had been his agents in brokerage or other pecuniary transactions for some time. It was from such things that his indebtedness to them grew up. They charged him their commissions on the sale of these notes to Goodspeed, and thus he paid them their hire as his agents. His indebtedness was paid by the sale of these notes, and he received and retained a check of Bound & Co. for a

balance thereafter due to him from the avails of the sale. The interview between him and one of the Bounds, as described by Ahern himself, shows that he gave them power to sell the notes, and thus made them his agents to sell. He says that Bound told him that he had an offer to place his notes, if he would make them, and give the stock as security. What Bound meant by an " offer to place his notes," and what Ahern understood him to mean, is shown by the answer which Ahern made to what Bound said. He declined to do it — *i. e.*, to make the notes : " I told him that I had never sold a note in my life." Then, in his view, having an offer to place his notes, was an offer to buy the notes; and accepting an offer to place the notes, was agreeing to sell them; and authorizing an acceptance of the offer to place, was authorizing an agreement to sell, and a selling. When, then, Ahern tells us that Bound came again and again and importuned him to make the notes, we understand that he came and importuned Ahern, only to be enabled by him to accept the offer to place the notes, and to be empowered to sell them. When Ahern yielded to this importunity and consented, he consented to a sale by Bound & Co. for him.

Bound & Co., being his agents to sell the notes without expressed restriction of their powers, had authority to do any act, or make any declaration in regard to them, found necessary to make a sale, and usually incidental thereto. (*Andrews* v. *Kneeland*, 6 Cow., 354; *Nelson* v. *Cowing*, 6 Hill, 336; *Sturgis* v. *N. J. St. Bt. Co.*, 62 N. Y., 625.) It is plain that Goodspeed would not have bought the notes, nor was it reasonably to be expected that they could be sold at all, unless the negotiation was accompanied with an assurance that would be confided in that the notes were business paper. It is within our judicial observation, from many cases before us, that such is the usual accompaniment, in that mart, of a sale of promissory notes having the guise of commercial paper. Bound & Co. had power, then, by their agency, to give such assurance.

Here arises an interesting question in the case. When

Bound & Co. made the representations to Goodspeed, upon which the first note was taken by him, that note was not in existence, nor had Ahern authorized them to sell a note of his to Goodspeed or other person. It is said that they were not then his agents, and that whatever they said at that time could not affect him. The rule is stated in Smith's Mercantile Law thus: "The representation of an agent about the subject-matter of a contract, which he is negotiating for his principal, will, if made during the course of that negotiation, bind the latter; but it must be made during, and in the course of, the negotiation, while the agent is actually representing his principal therein; for, if made at any other time, it has no more effect than that of a mere stranger." (Page 188, 3d Am. Ed., by H. & G.) It is apparent that, when Bound & Co. made these representations, they were not the agents of Ahern to sell this first note. There is no evidence to sustain a finding of fact contrary to this. We must hold that the representations made by Bound & Co., so far as this first note is concerned, were not binding upon Ahern, upon any considerations of law yet mentioned by us. (See *Dawson* v. *Atty*, 7 East, 367.) The same difficulty does not affect the two other notes.

It is, however, insisted by the respondent that there is a principle upon which Ahern is bound. It is claimed that he has ratified all the acts and words of Bound & Co. One may so ratify the acts of another who has acted in his business, though unauthorized so to do, as that he will be bound by his acts and declarations in regard to it. (*Fitzhugh* v. *Sackett*, 50 N. Y., 699.) But such ratification does not take place, unless the principal is fully informed at the time of all the circumstances of the transaction; or unless he means, without inquiry, to take upon himself the responsibility of what the other may have said and done, and to adopt all of his acts. (*Lewis* v. *Read*, 13 M. & W., 834; approved in *Freeman* v. *Rosher*, 13 Ad. & Ell. [N. S.,] 780.) It is not needed that there be an express act of ratification, in order to hold the principal. His subsequent

assent may be inferred from circumstances, which the law considers tantamount to an express ratification. And the acts of the principal are to be construed liberally in favor of the adoption of the acts of an agent. (*Codwise* v. *Hacker*, 1 Caines R., 526, per Kent, J., p. 540.) It already appears that Ahern knew that the first note made by him was to be sold by Bound & Co. He also knew, as his testimony shows, that it was to be sold in pursuance of a prior negotiation, at a discount of twelve *per centum per annum.* He knew that the note was not business paper. He had been a large purchaser of paper of Bound & Co., and hence knew their mode of effecting sales of paper. It is to be inferred that he knew that in the purchase of paper, at a greater rate of discount than seven *per centum per annum,* the buyer usually exacted a representation that the paper sold was business paper, so that he might rely upon the fact, if indeed the paper was such, or upon the estoppel if it was not.

It is so, also, that a ratification will be inferred from the mere habits of dealing between the parties, even where the course of dealing between them may not amount to satisfactory proof of an original authority. (See *Eagle Bk.* v. *Smith*, 5 Conn., 71; *Neal* v. *Erving*, 1 Esp., 61; *Barber* v. *Gingell*, 3 id., 60.) This comes in play here, not because it appears that Ahern ever before sold notes by Bound & Co., as his agents, but because he had bought notes of them, and thus knew their mode of dealing, and the mode of dealing of men in their business of note-brokers, and it aids in the inference that he knew, or had reason to believe that when his note was placed, it was by a representation that it was business paper; and that he accepted the result without inquiry.

Ahern adopted the results of Bound & Co.'s acts and declarations. He received and has kept the fruits of their action with Goodspeed. It is a fair inference that he falls within the second branch of the principle which we have above stated, by which a person ratifies the acts of one acting as his agent without authority at the time. The maxim is,

*omnis ratihabitio retrotrahitur et mandata priori æqui-
paratur.* Every ratification is retrospective, and is equiva-
lent to a prior command. On this ground, the plaintiff
Ahern is to be held estopped from setting up the usury in
the first note. On the ground of a prior authority, he is
to be held estopped from setting up usury in the other two
notes. These views are not in exact accordance with the
findings of fact of the trial court; but they are warranted
by the facts of the case, and so the judgment may be sus-
tained upon the principles which they present.

The judgment appealed from should be affirmed.

All concur.

Judgment affirmed.