RADER'S ADMINISTRATOR *v.* MADDOX.

ERROR TO AND APPEAL FROM THE SUPREME COURT OF THE TER
RITORY OF MONTANA.

No. 54.   Argued October 25, 26, 1893. — Decided November 6, 1893.

A number of horses, mortgaged to secure the payment of a promissory
note of their owner given to the mortgagee, were, under the provisions
of a statute of Montana relating to chattel mortgages, sold by a sheriff
on the maturity of the note without payment.  With the assent of the
attorney of the mortgagee, who was present at the sale, the purchaser
paid a part of the purchase price in cash, and left the horses with the
sheriff as security for payment of the remainder in five days.  On the
expiration of that time he failed to pay the balance.  The attorney
refused to receive the sum paid in cash and the horses as security for
the remainder; but the principal received the amount paid in cash,
and sued the sheriff and his bondsmen to recover the remainder.  *Held,*
that he could not repudiate the transaction in part and ratify it in part;
and that having ratified it in part by the receipt of the sum paid in cash,
he could not maintain this action.


THIS case came from the Supreme Court of the Territory of
Montana, and presented the following facts : William Rader,
one of the defendants in the case as commenced in the Dis-
trict Court of that Territory, was sheriff of Meagher County,
Montana, and the other defendants were his bondsmen.  Mad-
dox and Gaddis were the owners respectively of two notes,
given by P. D. Kinyon, and secured by a chattel mortgage
on some four hundred horses.  At that time there was in
force in Montana the following statutory provision :

"It shall be lawful for the mortgagor of goods, chattels, or
personal property to insert in his mortgage a clause authoriz-
ing the sheriff of the county in which such property or any
part thereof may be, to execute the power of sale therein
granted to the mortgagee, his legal representative and assigns,
in which case the sheriff of such county, at the time of such
sale, may advertise and sell the mortgaged property in the
manner prescribed in such mortgage."   Compiled Statutes of
Montana, § 1550.

This mortgage contained the clause referred to in the statute. On the maturity of these notes, and on the 9th day of August, 1887, one N. B. Smith, an attorney at law, as attorney for Maddox, placed in the hands of sheriff Rader this mortgage, endorsed as follows:

"You are hereby authorized to execute the power of sale contained in a certain chattel mortgage, of which the within is a true copy.

"FLETCHER MADDOX & WILLIAM GADDIS,

"By N. B. SMITH, *Their Agent and Attorney.*"

Rader collected the horses, and advertised them for sale. At the day of the sale a party by the name of A. B. Kier was a bidder, and after some horses had been knocked down to him, Rader — no money having been paid — refused to receive any further bids. Thereupon Kier represented that he had in the bank $1752; agreed to turn that money over to the sheriff, and leave with him all horses that should be knocked down to him; and further, that if, in five days, he should not complete the payment, both money and horses should be forfeited. Neither Maddox nor Gaddis were present, but Smith their attorney was. The matter was referred to Smith, and he directed the sheriff to continue the sale and receive the bids of Kier. Horses to the amount of $8096.50 were struck off to Kier. The $1752 was deposited with the sheriff, and the horses were left with him. Kier failed to complete his purchase by the payment of the balance of the money. After the five days had expired, the sheriff tendered the $1752 and horses to Smith, for Maddox and Gaddis, but Smith declined to receive either. Thereafter, Maddox and Gaddis took the money, but declined to receive the horses. The sheriff received no other instructions, and after holding the horses for about a month turned them over to his bondsmen, and Maddox and Gaddis, one as plaintiff and the other as intervenor, brought this suit to recover the difference between $1752 and $8096.50. They obtained judgment in the District Court, which judgment was affirmed by the Supreme Court. *Maddox* v. *Rader*, 9

Montana, 126. From that judgment the sheriff and his sureties brought the case here by both writ of error and appeal.

*Mr. H. T. May,* (with whom was *Mr. A. H. Garland* on the brief,) for plaintiffs in error and appellants.

*Mr. Fletcher Maddox* in person for defendants in error and appellees. *Mr. M. F. Morris* filed a brief for same.

*Mr. James Hoban* filed a brief for Gaddis, intervenor.

MR. JUSTICE BREWER delivered the opinion of the court.

On the trial of this case, all the testimony offered by the defendants to show the circumstances of the sale was on motion of the plaintiffs stricken out by the court. For the purpose of this hearing, therefore, it must be assumed that the facts were as this testimony tended to show that they were. The owners of these notes and mortgage were not present at the sale, but were represented by their agent and attorney, and by his direction the sheriff received the bids of Kier up to eight thousand dollars and upwards, and, as security for the completion of those purchases, retained all the property bid for, and in addition received $1752. The contention of the mortgagees is, that an attorney has, in the absence of special authority, no power to make a sale on credit, or to receive anything other than money on a claim placed in his hands for collection. Without questioning the truth of that proposition, it seems to us that it is inapplicable. No completed sale was made, no title passed; and while these horses were struck off to Kier, the transaction was evidently merely a conditional sale, to be perfected if, and only if, within five days the balance of the purchase money was paid.

But it is unnecessary to pursue any inquiry in this direction, for upon a very clear rule of law the mortgagees are estopped from maintaining this action. The arrangement, whether within or without the power of the attorney, was made and carried into effect by his directions, and it was an arrangement by which

the proposed buyer deposited $1752 with the sheriff, as well as left with him the horses which he had attempted to purchase. If that transaction was beyond the power of the attorney, and the mortgagees were intending to repudiate it, they were bound to repudiate it *in toto.* They could not accept that which was beneficial, and avoid that which was burdensome. 1 Parsons on Contracts, (7th ed.,) 49 to: 52, and cases cited in notes. It is urged, however, that it was the sheriff's duty to pay over the entire amount of the notes, and that the mere receiving from him of a part of that which it was his duty to pay did not work a ratification of any unauthorized proceedings by which he obtained that sum. This argument rests upon the assumption that a different rule obtains where the deposit by the proposed buyer is money, from that which would obtain if it were some other personal property. But can the question of ratification depend on the character of the deposits? If Kier had deposited a gold watch as security for the completion of his purchase, and the plaintiffs had received that from the sheriff, there would be no doubt that they had ratified the act of their attorney. Suppose that the deposit was a package whose contents were unknown, and that deposit was accepted by the plaintiffs; would it prove a ratification if, when opened, the contents turned out to be watches, and not a ratification if only money? It may be that this case turns somewhat on whether the sheriff and plaintiffs understood and intended that the payment of this money was in fact a transfer by him to them of the deposit, or merely a payment on account; but even if this be so, the question was one of fact to be settled by the jury, and should not have been disposed of by striking out all the testimony, and withdrawing the case from the jury. Kier parted with his property on the faith of this agreement between Smith and himself; and if it was unauthorized, and gave him no rights, he was entitled to a return of his deposit, whether that was a watch or money ; and if the plaintiffs have taken from the sheriff this deposit, they have deprived him of the power to return it. It is unnecessary to hold that the horses became the property of plaintiffs. It is enough that they, by receiv-

ing this deposit, have ratified the arrangement made by their attorney as to the sale which the sheriff was making, and if they desired a resale of the property they should have directed it. They cannot repudiate the action of their agent and attorney and treat the sheriff as having made a complete sale, when in fact he had not. When the money and horses were tendered to their attorney, he declined both. But they took the money, while declining to receive the horses, and failed to give any instructions to the sheriff as to further sale or otherwise. They assume to treat this as a completed sale to Kier, when in fact it was not, and when they have ratified what the sheriff did in respect thereto in obedience to the instructions of their agent and attorney by taking the deposit made by Kier.

The judgment must be reversed, and the case remanded for a new trial. As since it was brought to this court the Territory of Montana has been admitted as a State, and as no question of a Federal nature is presented, the case will be remanded to the Supreme Court of the State.

*Reversed.*

The CHIEF JUSTICE did not hear the argument or take part in the decision of this case.