### HARTFORD & N. Y. TRANSP. CO. v. PLYMER.

(Circuit Court of Appeals, Second Circuit. January 8, 1903.)

#### No. 43.

1. CORPORATIONS—AUTHORITY OF AGENT—EMPLOYMENT OF BROKER TO SELL VESSEL.

Authority given by a corporation to its superintendent to sell a steamship may be presumed by those dealing with him with reference to the business to include authority to employ all usual and suitable means in making the sale, and where he employed a broker, who made the sale, and to whom he agreed to pay the usual commission, and the corporation subsequently ratified the sale, and received its proceeds, the questions whether the means employed were usual and suitable, and were within his authority, under the facts and circumstances of the case are for the jury.

**2. SAME—ACTION BY BROKER FOR COMMISSIONS—QUESTION FOR JURY.**

Plaintiff, a steamboat broker in New York, was authorized by the superintendent of defendant corporation having charge of its New York office to sell a steamer owned by defendant for $150,000, subject to plaintiff's commission of 5 per cent., and plaintiff was the efficient agent in procuring the sale of the vessel at that price to the United States. The general manager of defendant, who was also a director, had previously authorized the superintendent to sell the vessel at the same price, and subject to the same commission, to another party, and on being informed that he had made the same offer for a sale to the government he acquiesced. The sale was confirmed by defendant's directors at a meeting in which the general manager took part. *Held,* that such facts were sufficient to warrant the submission to the jury of the question whether the superintendent was authorized to contract for the sale of the vessel through the agency of plaintiff, and subject to the payment of his commission.

**8. SAME—RATIFICATION OF SALE BY AGENT—EFFECT.**

Where the general manager of a steamship company, who was also a director, authorized its superintendent, in charge of one of its offices, to sell a vessel owned by the company at a stated price, less a broker's commission, assuming that the corporation would ratify his acts, and the superintendent made the sale through a broker, and it was subsequently ratified at a meeting of the directors of the company, the manager being present and participating as a director, such ratification must be presumed to have been made with knowledge by the corporation of the facts known at the time to the manager, and its effect was equivalent to an original authority to the superintendent to contract for the payment of the broker's commission. Per Wallace, Circuit Judge, concurring.

In Error to the Circuit Court of the United States for the Eastern District of New York.

For opinion below, see 103 Fed. 674.

Herbert Gann, for plaintiff in error.

John T. Foley, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. Writ of error by defendant from judgment entered in favor of plaintiff in the court below on a verdict for $9,098.22, for commission on sale of the Hartford, one of defendant's vessels. A motion for a new trial was denied. Error is assigned because of the refusal of the court below to direct a verdict in favor of defendant on the ground that there was no evidence to show that defendant authorized plaintiff to act as its broker in procuring said sale.

Plaintiff is a steamboat broker in the city of New York. Defendant is a Connecticut corporation, located in Hartford, Conn., and engaged in running a line of steamboats between Hartford and the city of New York, and having an office in New York. Its president and treasurer, E. S. Goodrich, attended to the finances of the company. Its general manager, C. C. Goodrich, had the general management of the traffic department. Both of these officers had their places of business in Hartford. Robert J. Noble was the superintendent of the New York office, and, as such, had charge of its general business in New York.

In the spring of 1898 the company owned three boats, namely, the

120 F.—40

City of Springfield, the Hartford, and the Middletown. Frank E. Kirby was a consulting engineer in the employ of the United States government, charged with the duty of selecting, inspecting, and recommending steamers for service in the quartermaster's department of the United States army. It appeared that Noble first met plaintiff prior to the transaction here in suit in regard to the sale of the steamer City of Springfield, which Noble had been authorized to sell; that Noble offered the vessel to plaintiff, and told him, if he could sell it, "we would pay him a good commission"; and that Noble afterwards sold the boat, but not to plaintiff. It did not appear whether Noble was expressly authorized to pay, or did in fact pay, any commission to any one for said sale. President Goodrich testified that he authorized General Manager Goodrich to sell the Springfield, and that he (Manager Goodrich) "authorized Mr. Noble to contract the New York end of it"; that he (President Goodrich) did not know that Noble agreed to pay plaintiff a commission on the sale of the Springfield, "any more than I did in the Hartford case." He added: "I left the matter with [Manager] Goodrich. I presume he, in turn, left it with Noble." Noble testified that, acting under authority received from the company, he got the customer, made the price, and finally sold the Springfield, and the sale was consummated at Hartford.

The plaintiff testified that, having been requested by Kirby to find a steamer for the United States army, he called on Noble at his office, and asked him whether the Hartford was for sale; if so, at what price, subject to the usual commission of 5 per cent.; that Noble said he thought the company might sell at $150,000, but he would communicate with the company and advise him; and that Noble also suggested that he (plaintiff) should write to the company, which plaintiff did; that he received no answer to his letter, but that on December 1st he called at Noble's office, and told him he had a customer who would pay cash for the vessel; that Noble said he (plaintiff) could offer it for $150,000, subject to his 5 per cent. commission; that Noble said he had not received any word yet from Hartford, but sent him to look the vessel over; and that later in the day he telephoned Noble, asking whether he had heard from Hartford, to which Noble replied: "Yes, I have. You can sell the vessel at $150,000, subject to your commission of five per cent. That is official. Go ahead." Plaintiff then offered the vessel to Kirby, and notified Noble. Kirby thereafter went to Washington, and recommended the sale to the United States government. Such sale was effected for $150,000, and the plaintiff now claims his commission of 5 per cent. Kirby testified that before he reached Washington no one except plaintiff had called his attention to the Hartford.

The court, having duly charged the jury, submitted to them the following questions:

"(1) Did Noble have authority from the corporation to authorize the plaintiff to sell the vessel for $150,000, subject to a five per cent. commission?

"(2) Did Noble in fact authorize the plaintiff to sell the vessel for $150,000, subject to a commission of five per cent.?

"(3) Was the plaintiff the efficient agent—that is, the procuring cause—of the sale?"

The jury answered all the questions in the affirmative, and rendered a verdict as aforesaid.

The finding of the jury on the foregoing evidence disposes of the second and third questions.

The further evidence in support of an affirmative answer to the first question may be summarized as follows:

On December 1st Flint & Co., shipbrokers of New York, called on Noble to learn whether defendant would sell the Hartford. Noble telephoned Manager Goodrich, asking whether he would consider said offer, to which Goodrich replied:

"If they will take that boat, and pay for her before the 20th of the month, I will sell her for $150,000. * * * Perhaps we would allow them five per cent. off."

He authorized Noble to put this offer in writing, which was done by the following letter:

"Gentlemen: As per your request this is to confirm conversation over telephone this P. M. We will sell steamer Hartford delivered New York on or before December 25, 1898, for the sum of $150,000 subject to commission of five per cent. payable on receipt of said sum.
"Yours truly,        Hartford & N. Y. Trans. Co.,
"Per R. J. Noble."

Noble testified that at that time Goodrich said, "If we can get $150,000 for that boat, less the five per cent., I know I can get that ratified;" that, just as he hung up the telephone, plaintiff came in, and asked whether Noble had heard anything from Hartford with respect to him; that he told him he was authorized to make said offer to Flint & Co., and immediately afterwards plaintiff told him he had offered the boat to the government, to which Noble merely replied, "Aha!" and plaintiff left the office. Noble further testified that the next day Kirby called on him, and inspected the boat, and that on said day he (Noble) telephoned Manager Goodrich that he had offered the boat to Kirby, and Goodrich replied: "That is all right. If they want her, I think I can make a sale of it at that price. I know I can get that ratified." Noble said that Goodrich acquiesced in his (Noble's) proposition to sell to the government, and authorized him to sell to the government for $150,000. He further testified as follows:

"I assumed that when Mr. Kirby called that he (Manager Goodrich) would do just the same as he would do with Flint & Company. The theory was, if we were to get $150,000, we were to get it right away."

Noble also testified that plaintiff suggested writing to Manager Goodrich, and he (Noble) said:

"I don't think Mr. Goodrich will be home to-morrow. If you write to the Hartford & New York Company at Hartford, they will open the letter in the office, and Mr. Goodrich hardly lives a day but what he is in telephone communication with the office, and they will open the letter, and probably consult with him about it."

Manager Goodrich confirmed Noble's testimony as above. He testified that he told Noble he was sure he could get a confirmation of a sale of such a character as that proposed to Flint. He testified that his telephone conversation with Noble was as follows:

. "Mr. Noble says to me over the phone: 'We have an army officer in here, or have had one this morning, and I have taken the liberty to quote the price you gave Flint & Co. to him for the United States government through the War Department. Have I done right?' I said: 'I think the War Department is just as good as Flint & Co., and if they want it, if you limit them as to the time so we get the same opportunity we have with Flint & Co., as quick as the close of navigation comes we can turn the steamer over to them, and nearly get our boat ready for next season; and I ain't afraid to say the directors will confirm that as they would for Flint & Co.' The next matter that occurred was Mr. Noble telling me that Mr. Kirby had said to him that he should recommend our vessel, and that what he recommended was pretty certain to go through; that it looked as though it wouldn't be Flint & Co., it would be the United States government."

As to commission he testified as follows concerning the Flint sale:

" 'They insist on buying at the very lowest price they can buy,' and then I did tell him, if he would come within five per cent. of it, to go ahead, and make the trade. I said Flint & Co. should be conceded that much if that is all that stood between them on such a trade. Yes, sir, I did so understand it, and did so state."

President Goodrich testified that when he heard, about December 1st, that there was inquiry for the Hartford, he said he "thought he would consent to it if we got the price, and the price named was $150,000; that my opinion was, if that price could be got, it would be confirmed by the board of directors"; that he told Manager Goodrich "we could go ahead on that, and, if the sale could be effected, it would be confirmed. * * * The sale was subsequently made to the government through Mr. Noble. I think he had charge of it." The sale to the government was subsequently confirmed by vote of the board of directors.

In these circumstances the court was clearly justified in leaving to the jury the question of Noble's authority to contract for the sale of the steamboat to the government through the agency of the plaintiff. Noble was the representative of the company in New York. General Manager Goodrich had previously authorized him to sell the Springfield, and he had sold her, and the company had ratified the sale. When plaintiff called at the office to inquire whether this vessel was for sale, Noble referred plaintiff to the company, and advised him to write to the home office. The general manager, Goodrich, who was authorized to sell the vessel, received a letter from plaintiff, written November 28th, in response to this advice, stating that plaintiff had an inquiry by a client whose name was not disclosed for the purchase of a steamer similar to the Hartford, and asking whether defendant would allow plaintiff a commission of 5 per cent. in case such sale was effected. With this inquiry and notice of claim before him, Manager Goodrich telephoned Noble, "If we can get that $150,000 for that boat, less the five per cent., I know I can get that ratified." Noble was authorized to contract to sell the Hartford to Flint & Co. for $150,000, less a commission of 5 per cent., and he actually contracted to sell the Hartford to the United States government on the same terms, before consulting the general manager, acting under what he apparently supposed was a sufficient general authority to sell, provided the customer was responsible. That the president, the general manager, and Noble considered the authority as a general one

to sell, subject to above limitation, appears from their statements and conduct. The defendant corporation ratified Noble's offer to sell to the government upon the terms of sale authorized as to Flint, and has received and retained the fruits of the very sale of which plaintiff was the procuring cause. "This assent of the corporation thereto will be presumed, for, when a person has received and appropriated the fruits of a transaction done in his name and under apparent authority from him, he thereby furnishes the highest possible evidence of his approval." Spelling on Private Corporations, vol. 2, p. 832. Walsh v. Hartford Fire Insurance Co., 73 N. Y. 10; Patterson v. Robinson, 116 N. Y. 193, 22 N. E. 372.

It is contended by defendant's counsel that, even if the evidence authorized a finding that the company authorized Noble to sell the Hartford, there is no evidence that it authorized him to employ a broker to effect such a sale; and that the resolution of the board of directors ratifying the sale does not include the contract to pay broker's commissions, because the company was not informed of said employment, and it was not expressly authorized. In support of this contention he relies upon the rule that a ratification, in order to bind the principal, must have been made with full knowledge of all material facts. Bennecke v. Insurance Company, 105 U. S. 355, 360, 26 L. Ed. 990; George Benninghoff v. The Agricultural Insurance Company of Watertown, N. Y., 93 N. Y. 495. But the only facts which defendant's president and general manager stated that they deemed material were that a sale for $150,000, less a 5 per cent. commission, should be made to a responsible purchaser for cash, payable soon enough to enable defendant to get another boat for next season. All these requirements were satisfied by said sale, through this agent who had charge of it, and the ratification merely confirmed the assurance made by the defendant's president and manager to Noble that, if the government would do what Flint & Co. had offered to do, the directors woul ratify such action. The open exercise of a power which presupposes an authority delegated to officers of a corporation, in connection with other corporate acts showing that such corporation must have contemplated the legal existence of such authority, raises a presumption that the exercise of such power was delegated to such officers. "And when a contract is made by any agent of a corporation in its behalf, and for a purpose authorized by its charter, and the corporation receives the benefit of the contract, it may be presumed to have authorized or ratified the contract of its agent." Pittsburgh, Cincinnati & St. Louis Railway Company v. Keokuk & Hamilton Bridge Company, 131 U. S. 371, 383, 9 Sup. Ct. 770, 33 L. Ed. 157. Rader's Administrator v. Maddox, 150 U. S. 128, 129, 14 Sup. Ct. 46, 37 L. Ed. 1025.

An agent intrusted by his principal to do an act, or to take charge of a particular class of his principal's business, may be presumed by those dealing with him in reference to such business to possess authority to employ all the usual or suitable means incident to such business. Spelling on Corporations, §§ 126, 700; Tyler v. Anglo-American Savings Association, 30 App. Div. 404 et seq., 52 N. Y. Supp. 77; Martin v. Niagara Falls Paper Mfg. Co., 122 N. Y. 165,

174, 25 N. E. 303; Argersinger v. MacNaughton, 114 N. Y. 535, 21 N. E. 1022, 11 Am. St. Rep. 687. "An agent authorized to sell property, in the absence of any express limitation of his powers, is authorized to do any act * * * in regard to the property found necessary to make a sale, and usually incident thereto." Ahern v. Goodspeed, 72 N. Y. 108, 114. He is authorized to adopt the ordinary means of accomplishing the business with which he is intrusted (1 A. & E. C. [2d Ed.] pp. 996, 1013), and according to the custom and usage of the market or place, whether known to principal or not (Bailey v. Bensley, 87 Ill. 556).

The question as to what is usual or suitable or as to what facts and circumstances will warrant a presumption of authority is for the jury. Wharton on Agency, § 187; Spelling on Private Corporations, § 178; Merchants' Bank v. State Bank, 10 Wall. 604, 644, 19 L. Ed. 1008; Mott v. Consumers' Ice Co., 73 N. Y. 543, 550; Conant v. American Rubber Tire Company, 48 App. Div. 327, 62 N. Y. Supp. 972. Here the uncontradicted testimony showed that the customary rate of brokerage commission for the sale of steamboats in New York was 5 per cent. The conduct of Noble in speaking to various brokers about the Hartford when he was authorized to sell her and his actual dealings with plaintiff, as a broker, in attempting to secure her sale, are persuasive evidence of the general scope of Noble's authority, and of the course of business of this corporation in such matters, and of the means usually employed and naturally incident to such a sale. In these circumstances we think the court, in the absence of any evidence to the contrary, would have been justified in assuming upon the evidence, or in holding as a matter of which the court would take judicial notice, that, if the sale of such a vessel was intrusted to the superintendent of defendant's general traffic business in the city of New York, the services of a broker would naturally be required in order to find a customer and to effect such a sale. Ahern v. Goodspeed, supra.

But whatever question might otherwise have arisen on this point, the court, in its charge, fairly stated to the jury the law as to the issues involved, and submitted to the jury, upon the evidence already considered, the special questions whether Noble had authority from the corporation to authorize the plaintiff to sell the vessel for $150,000, subject to a 5 per cent. commission, and whether Noble in fact authorized the plaintiff to sell the vessel for $150,000, subject to a commission of 5 per cent. The jury have found these issues in favor of the plaintiff, and the evidence is abundantly sufficient to support said finding.

The judgment is affirmed, with costs.

WALLACE, Circuit Judge. I agree that the judgment should be affirmed, but place my concurrence upon these grounds:

Charles C. Goodrich was not only the traffic manager of the defendant corporation, but he was a director. Prior to December 8, 1898, he had authorized Noble to sell the steamship to the government for $150,000, less a commission of 5 per cent.; that is, he had authorized him to sell the vessel to Flint & Co. upon those terms, and had sub-

sequently authorized him to sell to the government on the same terms. He had done this assuming that the corporation would ratify his acts. December 8th there was a meeting of the board of directors, Goodrich being present and participating; and by resolution the sale of the vessel was confirmed. That corporate act must be presumed to have been done with knowledge by the corporation of the facts known at the time to Goodrich. National Security Bank v. Cushman, 121 Mass. 490; Bank of United States v. Davis, 2 Hill, 451, 463; Union Bank v. Campbell, 4 Humph. 394; Clerks' Savings Bank v. Thomas, 2 Mo. App. 367; United States Insurance Co. v. Shriver, 3 Md. Ch. 381; The President, etc., v. Cornen, 37 N. Y. 320, 93 Am. Dec. 573. Its effect was equivalent to an original authority from the corporation to Noble to allow a commission upon the sale. I therefore think there was sufficient evidence to warrant the findings of the jury upon the three questions submitted to them, and that the trial judge properly refused to direct a verdict for the defendant.