**ZOOK PALM NURSERIES, Inc., v.**
**UNITED STATES.**

No. 9978.

Circuit Court of Appeals, Fifth Circuit.

June 3, 1942.

J. Mark Wilcox, of Miami, Fla., for appellant.

Tom DeWolfe and Paul Campbell, Sp. Assts. to Atty. Gen., Francis M. Shea, Asst. Atty. Gen., and H. S. Phillips, U. S. Atty., of Tampa, Fla., and George A. Smathers, Asst. U. S. Atty., of Miami, Fla., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

HOLMES, *Circuit Judge.*

This action was filed by appellant against the United States to recover damages, in the sum of $188,296.23, done to its nursery gardens and property located along the east bank of the Intracoastal Waterway in Palm Beach County, Florida. It is alleged in the complaint, as the cause of the injury, that said property was overflowed by salt water from said Intracoastal Waterway; and that this was due to its widening and deepening in the vicinity thereof, and the removal of the dike along the side thereof, by the War Department.

This appeal is taken from an order of the court below dismissing the complaint, in accordance with findings of fact and conclusions of law filed on the same day, after a preliminary hearing was had as required by the Act under which the suit was brought.[1] On this hearing, the district judge found that appellant had signed a complete release of the claim against the United States, and that the release agreement did not contemplate the construction of a dike by the Government.

Since the right of appeal, as well as the jurisdiction of the district court, is limited by the provisions of said Private Act, the appellee contends that, after the findings were made by the judge in the court below, no further proceedings were permissible either in the court below or on

---

[1] Private Act approved June 20, 1940, 54 Stat. 1291.

appeal to this court. We do not so construe the provision for appeals in suits under the Act. It provides that such appeals "shall be had in the same manner as in the case of claims over which said court has jurisdiction under the provisions of the Judicial Code." Therefore, we hold that the appeal in this case was proper; and we turn to a consideration of the same on the merits of the issues submitted to the district judge at a separate hearing under the first proviso of said Act.

After conferring jurisdiction upon the court below to "hear, determine, and render judgment, upon" the above claim, said Act contained the following proviso: "Provided, That the district judge shall, at a separate hearing, first determine whether or not any release signed by claimant, Zook Palm Nurseries, Incorporated, and particularly a release dated May 3, 1935, is a complete release of the claim against the Government which the claimant alleges; and whether or not the release agreement contemplated the construction of a dike by the United States Government. Should the judge find that the release was a full and complete one as to the claims herein alleged, or if the judge finds that the release agreement did not contemplate the construction of a dike by the Federal Government, no further proceedings shall be had."

After a full hearing as required in said proviso, the district judge found both that said instrument was a complete release for past, present, and future damages suffered by appellants, and that the release agreement did not contemplate the construction of a dike by the United States. There was ample substantial evidence to support these findings, and we concur therein. The judge having so found, it became the duty of the court below to dismiss the suit, since the Act provided that no further proceedings should be had therein.

The judgment appealed from is affirmed.

SIBLEY, Circuit Judge (dissenting).

The justice intended by Congress has not, I think, been done. The proviso of the special Act quoted in the majority opinion was intended to obviate a trial of the damages if the United States had in law and equity a complete release, or if the agreement behind the release did not contemplate construction of a dyke by the Government. These questions about the release were to be tried first. I think the evidence, which is in no conflict, shows the release is not a complete one, and that the agreement which produced the release did contemplate a dyke to be built by the Government.

A release, however perfect on its face, is not complete against the non-performance of its own consideration. The recited consideration is "Ten dollars and other good and valuable consideration." It is permissible in a court of law (not to speak of the grace of Congress in this special Act) to show the consideration was $10,000 to be paid by the Inland Navigation District and a dyke to be constructed by the Government. The release is not good against the results of not constructing the dyke any more than it would be against not paying the $10,000 if that had not been paid. It is to this extent not a "complete release", notwithstanding its superficial completeness. The whole question really is whether the dyke was "contemplated" as a part of the consideration for the release, to repeat the very word Congress used.

It does not appear who accepted and agreed on the release for the Government if it was not Mr. Green, the Assistant to the Attorney General who brought the condemnation suit and was conducting the trial when the effort to agree began. The officials of the Florida Inland Navigation District were dealt with in fixing the amount they would pay for the right of way ($10,000), but they did not represent the United States, or pretend to be able to say what the Government would do about building the dyke; and they did not control the condemnation suit that was settled by this release. Mr. Green alone appears as representing the Government. Now in the trial of that suit it appeared that the United States had already taken a strip of land of appellant and a dyke on it which had protected appellant's tropical plants nursery from overflow by salt water. It had been apparent to everyone and was the subject of correspondence that unless a dyke was put back the nursery would be greatly injured or destroyed. These consequential damages were the main contention in the trial of the condemnation suit. Mr. Green stated to the court that the Government was going to put a dyke back. Appellant's counsel said he had no assurance of it. Mr. Green swore a Government

engineer, Stoughton, who testified that it was the intention of the Government to put the dyke there, pointing out the location of it on his map, and that authority had already been issued to build it, and he produced the written authority; and that he had staked the work out on the ground. Only the right of way remained to be provided. Mr. Green stated positively the dyke would be built. The court then refused to go on with the trial and told them to try to settle the matter. The next morning Mr. Green reported they had not reached a settlement, but probably would. This was on April 11. On April 17th an agreement was reached with the Inland Navigation District, which was to furnish all rights of way, that it would pay $10,-000. On the same day, at the suggestion of the District, appellant wrote a letter to the Government's District Engineer formally requesting the construction of the dyke, and an official of the District prepared a written right of way grant to the United States for the dyke, to be executed by appellant. The appellant on April 29 held a corporate meeting in which its president and secretary were authorized in a single resolution to execute the right of way grant, the release in controversy, and a stipulation withdrawing its claim in the condemnation suit, on payment of $10,-000. The President did not at once sign the right of way grant because it contained a release "from any and all damages done or caused to be done and from any claim or demand whatever * * * by reason of the construction of said waterway and the construction of said dykes"; and he feared he might be prevented from retaining the $10,000. He signed the release in controversy, however, on May 3, after getting the $10,000, and the claim in condemnation was withdrawn. On June 17 the right of way grant also was executed and sent to the engineer's office, and retained there. Unknown to appellant, however, the engineer had disbanded the labor force which was building dykes about April 30. The dyke was never built. It is claimed in consequence $188,000 of nursery stock has been killed by salt water.

It seems to me impossible to say that under the circumstances the settlement did not "contemplate the building of the dyke by the Government." A right of way deed would not otherwise have been prepared the very day the $10,000 was agreed on by the Navigation District. Appellant would not have authorized its execution and its President would not have executed and delivered it to the engineer. It was months later before appellant knew the work was not going to be done. It seems that one Zook made some objection to the dyke because it would destroy more of the plants in his care and would be ugly, but he was not the President or Secretary nor even a stockholder of appellant and had no authority in the settlement. Plainly the $10,-000 was for the rights of way and damage already done, and the release of all demands past and future against the United States would not have been given except on the faith that the dyke would be built as Mr. Green in court positively stated and engineer Stoughton swore.

This is not a suit for breach of contract to build a dyke. It may be conceded that Green and Stoughton had no authority to make a contract for the Government. My thought is that Green, acting for the Government, positively represented that the work would be done and thereby obtained a full release of a large claim against the Government. Under no principle of law or equity can a supposed principal take the benefit of the efforts of an agent, though not fully authorized, and repudiate the means by which it was obtained. Ratification must be of all, or none. Rader's, Adm'r, v. Maddox, 150 U.S. 128, 14 S.Ct. 46, 37 L.Ed. 1025; Aldrich v. Chemical Nat. Bank, 176 U.S. 618, 20 S.Ct. 498, 44 L.Ed. 611; Gotham Nat. Bank v. Sharood Co., 2 Cir., 23 F.2d 567; Maryland Casualty Co. v. Beebe, 10 Cir., 54 F.2d 743; 2 C.J.S., Agency, § 66. The rule is one of fundamental justice, and is applicable to the United States when a litigant. If the Government saw fit not to build the dyke it ought to have returned the release. Congress intended that if this release was obtained in contemplation of a dyke being built by the Government, it ought not to be enforced, for good faith and honesty forbid it.

I do not think, however, appellant has any just claim to $188,000. The results that have followed the absence of a dyke were foreseen and were the subject of correspondence when the dyke was first removed. They could have been averted by the appellant by building a dyke, and the duty to minimize damages probably required it. The claim ought not to exceed the cost of such dyke. If, as an illustration,

a fence had been removed, appellant could not by not building a new fence let trespassing animals gradually destroy its plants and charge their value to the Government. It ought to build a new fence, and charge only its cost.